IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF PENNSYLVAINA

MARK ROKITA Jr.  }
    plaintiff,  }  CIVIL ACTION NO. 3:20-CV-186
    v.  }
JOHN WETZEL, and THE  }
PENNSYLVANIA DEP'T  }
of CORRECTIONS,  }
    defendant.  }

## COMPLAINT

### I. JURISDICTION and VENUE

1) This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. This court has jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(3). Plaintiff seeks Declaratory relief pursuant to 28 U.S.C. § 2201 and § 2202. Plaintiff's claims for Injunctive relief are authorized by 28 U.S.C. § 2283 & § 2284 and Rule 65 of the Federal Rules of Civil Procedure. Any monetary relief open for determination by this court of law.

2) The Western District is an appropriate venue under 28 U.S.C. § 1391(b)(2) because it is where the events giving rise to this claim occured.

### II. PARTIES

3) Plaintiff, Mark Rokita Jr., is and was at all relevant times housed at SCI Houtzdale in the custody of the Pa Department of Corrections.

4) Defendant, John Wetzel, in his official capacity, is the secretary of the Pennsylvania Department of Corrections and is in charge of authorizing and upholding all relevant policies inclusive of medical procedures and treatment.

5) The Pennsylvania Department of Correction, is the agency that has denied the plaintiff medical treatment for a serious medical disorder.

### II. FACTS

6) The Plaintiff is currently incarcerated at SCI Houtzdale and has been diagnosed with "Substance Use Disorder" that the defendant has refused to treat with Medication-Assisted Treatment (MAT) or allow him to be seen by the Substance Use Disorder specialist who had been recently employed to treat those inmates who have become incarcerated on or after June 2019. Only those inmates who's inception was on or after this date are afforded the benefits of this MAT treatment during their incarceration and

the ability to continue to be seen by the specialist.

7) Plaintiff was diagnosed over thirty (30) years ago with "drug addiction" and had been through three rehabs and has repeatedly relapsed causing ongoing issues in plaintiff's life and asundered family relationships and problems with the judicial system. Plaintiff has been in and out of prison ever since he was seventeen years old Plaintiff has self-treated his addiction for most of the aforementioned thirty years. In 2004 plaintiff began Methadone maintenance which worked for awhile. However, plaintiff could not afford the cost once he had to pay the entire sum of the treatment. Plaintiff was then compelled to resort back to "self-medicating". Then 2006 plaintiff heard of a medication called "Suboxone". Once treatment began plaintiff noticed an immediate difference in his symptoms for addiction and even ADHD. He lived the next 6 years without the burden of self-medicating thanks to this new panacea.

8) Plaintiff relapsed in 2013 because of a separation between him and his spouse. The strain caused plaintiff to loose the financial ability to continue treatment and once loosing treatment he resorted back to the crime life which resulted in a life sentence in prison. Plaintiff requested treatment from the DOC but was denied. He spoke to the psychologist who apprised him that the only treatment availible is "talk therapy" and "group therapy" if the COVID-19 pandemic ever subsides. There is also "Vivitrol" for those inmates who receive a release date from the parole board which plaintiff will never be eligible to receive due to his sentence. Suboxone treatment is only availible for those inmates who have come to prison as of 2019. Plaintiff filed a grievance contending that treatment should be available to him also and was denied by the defendant because the treatment is only available to those inmates who have become incarcerated as of 2019.

9) Plaintiff attempted numerous times to at the least speak with the new addiction specialist now called "substance-use disorder" by the ADA and the CDC. The defendant hindered plaintiff from seeing the doctor for again the same reason; he came to prison to early. The "talk therapy" is the only treatment offered to plaintiff and unfortunately doesn't work for his specifically. Plaintiff did not have the ability to turn his disorder off when he came to prison.

IV. <u>LEGAL CLAIM</u>

10) Plaintiff contends that the defendant has violated the Eighth Fourteenth amendment in out U.S. Constitution, and Article I § 13 of our state constitution and Title II of the Americans with disabilities Act. The defendants are intentionally and deliberately ignoring a serious medical need. Our Supreme court has reasoned that since incarceration denies prisoners the ability to care for themselves and seek medical treatment on their own, they must depend on the prison to treat all their medical needs. This includes those diseases and disorders declared by the ADA and the Center for Disease Control (CDC), such as "Substance-use Disorder."

11) Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the sevices, programs, ...or be subject to discrimination by any such entity." 42 U.S.C. §12132, this includes, programs like Medication-Assisted Treatment (MAT) that is only afforded to inmates who's inception date was on or after June 2019. To discriminate and refuse treatment based on the date of incarceration is not only a violation of the ADA but also the Eighth and Fourteenth amendments in our U.S. Constitution because treatment for a serious medical need should be made retroactive.

12) The Federal ADA (42 U.S.C. § 12101 et seq.) and section 504 of the Rehabilitation Act (29 U.S.C. § 794) applies to prisoners. The rights against discrimination are among the few rights that prisoners do not park at the prison gates. Prisoners have the same interest in access to programs, services and activities available to other inmates of their prison as do people on the outside with a disability have the same interest as others similarly situated. Treatment for disorders and disabilities is apart of the rehabilitative goals of the DOC. rehabilitation for re-entry to our society is a major life activity.

13) The defendant's refuse to adequately treat a disorder deprives him of the benefit of health care programs, and that such conduct constitutes discrimination on the basis of his disability. As an initial matter, the medical care provided to the DOC's incarcerated population qualifies as a service that disabled inmates must receive indiscriminately under the ADA. Plaintiff asserts that he should have the same access to treatment as those inmates who came to prison in

2019. That is Medication Assisted treatment, which usually goes in tandem with group or talk therapy, which by itself may not work for every individual with the disorder.

14) Making treatment non-retroactive simply because of an inception date does not conform with an adequate governmental interest. Inmates have an equal protection right to medical treatment. The plaintiff has been diagnosed with the very same disorder by the defendant. The new inmates that receive treatment also enjoy the benefits of being seen by a substance use disorder specialist who has that ability to prescribe treatment. Plaintiff is also denied access to see this specialist. Ther is no rational disparity between plaintiff and these new inmates who receive these precocious benefits. The only discernable difference between those inmates who receive treatment and the plaintiff who does not receive treatment is not related to any legitimate governmental interest.

15) Substance use Disorder is a recognized disorder by the ADA and the CDC that deserves just treatment. Like any other disorder, each person reacts differently to different treatments. There are only a few treatment options for substace use disorder. The defendant offers antiquated and unsuccessful treatment to inmates who have been incarcerated prior to 2019, i.e. group therapy (NA groups) and for inmates who receive a date to be released by the parole board there is Vivitrol near the time of exodus. As with other disorders; untreated may result in disability or premature death.

16) Commonality of similarly situated individuals is made applicable to inmates who share a common disorder and should be treated with a common treatment plan. The Constitutionality of the DOC's treatment of prisoners who suffer from substance use disorder where the defendants; policies regarding the treatment of MAT formed the basis of the common question of fact and Law. The policy or custom of witholding treatment of Medication-Assisted Treatment from an individual who has been diagnosed with the same disorder as those they treat constitutes deliberate indifference to a serious medical need as described by our U.S. Supreme court.

17) The defendants showing of medical ureasonaleness is framed with larger theories of disability discrimination. The defendants decision is so unreasonable-in the sense of being arbitrary and capricious-as to imply that it is a pretext for some discriminatory motive, such as

animus, fear, or apathy. Denying plaintiff treatment based on his date of incarceration is discriminatory on its face, because it clearly rests on sterotypes and apathetic animosity, or lack of knowledge rather than a patients medical interest.

## V. VERIFIED STATEMENT

18) As the plaintiff and undersigned, I hereby verify that the aforementioned is true and correct to the best of my knowledge. I further aver that I understand the penalties of perjury pursuant to 28 U.S.C. § 1746.

## VI. REQUESTED RELIEF

WHEREFORE:, plaintiff respectfully requests that this court enter a judgment granting the following:

19) A Declaration that the acts and omissions described herein violated plaintiff's rights under the Constitutions and Laws of the United States and the ADA.

20) A preliminary and permanent injunction ordering the defendant to allow plaintiff to be treated as others similarly situated for his similar disorder.

21) A medical expert be summoned to offer expert testimony, because plaintiff has a lack in the ability to personal procure a medical professional due to specific DOC restrictions.

22) A jury trial on all issues triable by jury.

23) Plaintiff's cost in this suit.

24) Any additional relief this court or jury deems just or proper.

25) Petitioner further requests to proceed as informa pauperis. A motion shall be attached hereto

26) Plaintiff requests that service and marshall fee's be waived in order to expedite the preliminary injunction, due to plaintiffs financial limitations also caused by the COVID-19 pandemic.

DATE: september 04, 2020

RESPECTFULLY SUBMITTED,

Mark Rokita Jr

X _____

(5)

IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF PENNSYLVAINA

| | |
|---|---|
| MARK ROKITA Jr., <br>     plaintiff, <br> V. <br> JOHN WETZEL, and THE <br> PENNSYLVANIA DEP'T <br> of CORRECTIONS, <br>     defendant. | CIVIL ACTION NO. <br> 3:20-cv-186 |

## CERTIFICATE OF SERVICE

I, Mark Rokita, hereby certify that I have served the foregoing petition/motion/complaint (listed below) upon the person(s) listed by utilizing the facilities lock and key mailbox on the date specified:

United States District Court
Western District of Pennsylvania
    c/o the prothonotary
    Penn Traffic Building
    Johnstown, Pa. 15901
        (FIRST CLASS)

Copies **(ENCLOSED)**
(2) - Complaint (5 pages)
(3) - Order for Preliminary (1 pg)ea. Injunction and a Temporary Restraining order
(2) - Memorandum in support of (4 pgs)
(2) - Summons (1 pg)ea.
(1) - informa Pauperis, motion for
(1) - 12 months on Monthly statements (stapled together) (12 pgs)
(1) - verified statement (1 pg)

DATE MAILED: Sept. 08, 2020

Sorry for any Inconvenience

(MAILED BY)
MARK ROKITA JR.
# L J-8688
PO BOX 1000
HOUTZDALE, PA. 16698

X _____[signature]_____
AT SCI HOUTZDALE